[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
This is a medical malpractice action brought by the plaintiff as Executor of the Estate of his late wife, Mary Dawson (hereinafter the "Plaintiffs Decedent") against several medical services providers, including the defendants Andrew Salner, M.D. and Hartford Radiation Oncology Associates, P.C. (hereinafter the "Defendants"). The complaint alleges that Dr. Paul Kuchn, a surgical oncologist, had excised a mass on the Plaintiffs Decedent's left cheek and recommended that she consult with the Defendants for possible radiation therapy. Radiation therapy was provided by the Defendants, and the Plaintiffs Decedent had follow-up examinations throughout the late winter and spring of 1998. The complaint further alleges that the Defendants committed medical malpractice by failing to recommend additional therapies after radiation therapy was completed in December 1997. The Defendants determined that notwithstanding the radiation therapy performed by them, the Plaintiffs Decedent's lesion continued to grow rapidly. The Defendants recommended to Dr. Kenneth Kern, a surgical oncologist who had taken over the practice of Dr. Kuchn (who had retired) including the care and treatment of the Plaintiffs Decedent that he give consideration to radical resection and grafting of the cheek. Dr. Kern first had the Plaintiffs Decedent undergo chemotherapy which proved to be unsuccessful so on November 9, 1998 the Plaintiffs Decedent submitted to a massive surgical resection procedure. This operation was also unsuccessful the cancer having metastasized to other areas of the Plaintiffs Decedent who then died on April 9, 1999. The Motion for Summary Judgment asserts that because the instant action was not commenced until at least March 30, 2001, the Plaintiffs cause of action is barred by the statute of limitations, specifically the two-year limitation of C.G.S. §52-584[1]. Defendants concede that "based upon the factual allegations of the complaint, suit was properly brought within three years of the act or omission complained of". Memorandum CT Page 10951 of 6/6/01, page 4. However, the Defendants also claim that the instant case is in violation of the two-year limitation provided under C.G.S. § 52-584. Defendants claim that in accordance with said section, the Plaintiff had to bring suit . . . within two years from the date when the injury is first sustained or discovered orin the exercise of reasonable care should have been discovered
. . ." (emphasis added). Further, the Defendants claim that at the latest the Plaintiffs Decedent must have known that she suffered actionable harm by November 9, 1998 and that suit was brought more than two years after that date.
Extensive multiple briefs were submitted by both sides and oral argument was held on July 25, 2001.
 STANDARD OF REVIEW
A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Burns v. Hartford Hospital,192 Conn. 451, 455 (1984); Bartha v. Waterbury House Wrecking Co.,190 Conn. 8, 11 (1983).
A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. Dougherty v. Graham,161 Conn. 248, 250 (1971). To satisfy this burden, the movant must make a showing that it is quite clear what the truth is and that there is no doubt as to the existence of a genuine issue of material fact. Plouffev. New York, New Haven and H.R. Company, 160 Conn. 482, 488 (1971). The test has been said as one "in deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. [T]he test is whether a party would be entitled to a directed verdict on the same facts." Cummings and Lockwood v. Gray,26 Conn. App. 293, 296-97 (1991).
 ISSUES 1. Plaintiff has responded to the Defendants' claim that the applicable statute of limitations is C.G.S. § 52-584 by claiming that the applicable statute of limitations is found under C.G.S. § 52-555.[2]
For this Court to decide which statute is applicable here, the principles of statutory construction must be taken into account. C.G.S. § 52-584
was last amended in 1969 by changing the deadline for bringing an action from one year to two years from the date that the injury is first sustained or discovered or should have been discovered. By Public Act 91-238, C.G.S. § 52-555 was amended in 1991 to change the time CT Page 10952 limitation for an action for a wrongful death from two years from the date the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered (as it was and is in C.G.S. § 52-584) to within two years from the date of death. PA 91-238 also changed the period of repose from three years to five years.
A well-settled rule of statutory construction is that a statute that is specific takes precedence over a statute that is not specific. Here, however, both statutes are specific. C.G.S. § 52-584 specifically mentions malpractice of a physician but does not mention wrongful death. C.G.S. § 52-555 specifically mentions wrongful death actions but does not specifically include malpractice of a physician.
Another rule of statutory construction is that the Legislature in enacting or amending a statute is presumed to know of relevant legislation already enacted. Clearly in 1991 the Legislature was aware of C.G.S. § 52-584, yet still enacted by amendment the aforementioned provisions of C.G.S. § 52-555. C.G.S. § 52-555 did not carve out an exception for medical malpractice, and the Supreme Court stated in Ladd v. Douglas Trucking Co., 203 Conn. 187, 195 (1987): "Since its enactment our wrongful death statute has been regarded as the exclusive means by which damages resulting from death are recoverable." Admittedly this was before the enactment of PA 91-238, but still sets forth the Supreme Court's opinion that a wrongful death, which is the case at bar, is governed exclusively by C.G.S. § 52-555. Further, in Ecker v. WestHartford, 205 Conn. 219, 245 (1987) the court stated that, "The language of Section 52-555 does not specifically restrict its application to deaths resulting merely from the negligence of another." The principle that a specific statute as to death prevails over a statute which does not mention death as a consequence is supported by the ruling of Judge L. Paul Sullivan in Slater v. Mount Sinai Hospital, 1997 W.L. 345, 349, June 11, 1997 who stated: "It appears clear that if a specific statute of limitations specifically refers to `death' as a consequence of the underlying wrong that limitation rather than the limitation of General Statute § 52-584 would apply."[3] In Lynn v. Haybuster Mfg., Inc.,226 Conn. 282, 295 (1993), the court stated: "A wrongful death statute; General Statutes § 52-555; is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought. At common law, the death of the injured person, whether contemporaneous with the wrongful act or not, terminated liability of the wrongdoer because the right to enforce it ended with the death. (Citations omitted). Death and its direct consequences can constitute recoverable elements of damage only if, and to the extent that, they are made so by statute." That statute is § 52-555.
Accordingly, this Court concludes that the applicable statute of CT Page 10953 limitations in the case at bar is C.G.S. § 52-555. The Plaintiff has met the provisions of the statute. Two years from the date of the Plaintiffs Decedent's death is April 9, 2001, and five years from the date the Plaintiffs Decedent or Plaintiff discovered or should have discovered an actionable harm, assuming a November 9, 1998 date, would be November 9, 2003. Therefore, this Court finds that the applicable statute of limitations C.G.S. § 52-555 has not been violated, and for that reason alone, the Motion for Summary Judgment should be denied.
 * * * *
Since Defendants have claimed the applicability of C.G.S. § 52-584, the Court, notwithstanding its aforementioned ruling that § 52-555
applies, nonetheless, will address the issues raised by the Defendants set forth in Paragraphs 2, 3 and 4 hereafter assuming arguendo that, as the Defendants claim, the applicable statute is C.G.S. § 52-584.
2. Defendants also claim that Connecticut Practice Book § 17-45, previously CPB § 380, requires that the adverse party, in this case the Plaintiff, ". . . shall . . . file opposing affidavits and other available documentary evidence," and the Plaintiff has failed to file any affidavits or other documents. The Supreme Court, however, ruled on this issue in Catz v. Rubenstein, 201 Conn. 39, 49 (1986) in which the defendant had claimed that the trial court was entitled to rely upon the facts set forth in his affidavit and other documents submitted in support of his motion and render judgment because the plaintiff did not file a counter-affidavit. In Catz the court stated:
 "`Because the burden is on the movant, the evidence must be viewed in the light most favorable to the nonmovant and he is given the benefit of all favorable inferences that can be drawn.' (citations omitted). Relying on and crediting the facts set forth in the materials submitted in support of the defendant's motion, we nevertheless conclude that there remains a genuine issue as to when Foster discovered or in the exercise of reasonable care should have discovered the causal nexus, if any, between the metastasis of her cancer and the allegedly negligent conduct of the defendant. . . ."
Accordingly, this claim of the Defendants is rejected.
3. Defendants also claim that whether the statute of limitations in this case has been violated is an issue of law, not an issue of fact. However, in Catz v. Rubenstein, supra, the court also stated: "A genuine issue of material fact exists, therefore, as to when she discovered or in the exercise of reasonable care should have discovered her `injury', that is when she discovered she had suffered `actionable harm' and the CT Page 10954 resolution of that question should be left to the trier of fact." Id. 49. It is true, as Defendants claim, that in Merly v. State,211 Conn. 199, the Court held that as a matter of law the plaintiff failed to exercise reasonable care to discover the accrual of the wrongful death claim. However, this was a case in which plaintiffs decedent had committed suicide on July 30, 1979 and that his family became aware of the suicide by April 26, 1981 which was within the two year statute of limitation. The plaintiff claimed that the statute did not begin to run until the plaintiff discovered all the information necessary or until he obtains a qualified expert opinion as to the existence of malpractice.
 "In the present case, we conclude that the undisputed fact that the family, until one and one-half years after learning of the decedent's suicide, did not start any investigation into the circumstances under which it had occurred constituted as a matter of law a failure to exercise reasonable care to discover the accrual of the wrongful death claim. The plaintiff has advanced no circumstances to justify such an inordinate delay." Id. 208.
The facts of that case are distinguishable from the facts in the case at bar. This Court finds that at the very least the question of when the Plaintiffs Decedent should have known of the actionable harm against the Defendants is an issue of fact which means that summary judgment is not appropriate.
4. Assuming arguendo that the aforementioned issue is an issue of law, the Court finds that the Defendants have not met their burden of proving that the Plaintiffs Decedent knew or should have known of the actionable harm that she allegedly suffered. The affidavit of Dr. Salner and the medical records submitted with the Motion for Summary Judgment only indicate the physicians' opinions or analysis of the Plaintiffs Decedent's condition. They do not indicate in any way whether or not these opinions were conveyed to the Plaintiffs Decedent. Defendants claim that "Clearly, Mrs. Dawson knew or in the exercise of reasonable care should have known that she had suffered some form of actionable harm due to the alleged negligence of Dr. Salner at the latest by November 9, 1998 when she underwent the massive surgical resection procedure." It may be clear to the Defendants, but it is far from clear to this Court.
What is perhaps ironic is that Defendants claim that they did not commit negligence or malpractice. If that is true, how in the world could the Plaintiffs Decedent have been aware that she suffered actionable harm? If there is no negligence, there is no actionable harm. If it didn't take place, then how would the Plaintiffs Decedent have been able to learn of negligence that never existed? Maybe this argument can be made in most medical malpractice cases in which the statute of CT Page 10955 limitations is at issue,[4] but suffice it to say that the Defendants have offered no credible evidence to show that the Plaintiffs Decedent knew or should have known that the Defendants committed negligence and, therefore, actionable harm. There is little doubt that the Plaintiffs Decedent by November 9, 1998 was aware of the seriousness of her condition, but was probably also aware of the common knowledge that cancer is an insidious disease that can take lives despite the best efforts of physicians, and, therefore, had no knowledge or even an indication that the Defendants had committed malpractice.
 CONCLUSION
For all of the foregoing reasons, the Defendant's Motion for Summary Judgment dated June 6, 2001 is denied.
The Court would like to thank all counsel for their comprehensive briefs and articulate arguments.
 _______________________________ RITTENBAND, JUDGE TRIAL REFEREE